IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AON PLC, a United Kingdom public limited company, and AON GROUP, INC., a Maryland corporation, | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 16-cv-01924 |
| v. | ) ) | Judge Andrea R. Wood |
| MICHAEL HEFFERNAN, an individual, and ALLIANT INSURANCE SERVICES, INC., a Delaware Corporation, | ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Defendant Michael Heffernan left his employment with an affiliate of Plaintiffs Aon plc and Aon Group, Inc. to work for a competitor, Defendant Alliant Insurance Services, Inc. Plaintiffs allege that before his exit, and while he still had a fiduciary obligation to the Aon companies, Heffernan took their confidential information to use in his planned position at Alliant. Plaintiffs seek relief from Heffernan for breaches of his incentive compensation agreements, his fiduciary obligations, and Illinois statutory prohibitions against trade secret misappropriation. Plaintiffs also assert a claim against Alliant for aiding and abetting Heffernan's alleged fiduciary duty breaches. Now before the Court is Defendants' motion to dismiss this action based on the purported inconvenience of this forum or, alternatively, to transfer it to the Northern District of California. The parties also dispute the choice of law to be applied to any further proceedings here. For the reasons detailed below, Defendants' motion to dismiss or transfer is denied and Plaintiffs' claims will be resolved in accordance with Illinois law.

## BACKGROUND

Plaintiff Aon plc is alleged to be a United Kingdom public limited company and the parent of the following other affiliated Aon entities: Plaintiff Aon Group, Inc., a Maryland corporation with its principal place of business in Illinois; Aon Corporation, a Delaware corporation with its principal place of business in Illinois; and Aon Risk Insurance Services West, Inc., a California corporation with its principal place of business in Illinois. (Compl. ¶¶ 2–3. Dkt. No. 1.)

The parties agree that Heffernan was employed by an Aon entity from March 2000 through January 26, 2016. (*Id.* ¶ 8.) Which Aon entity he worked for is not so clear. Although Plaintiffs assert that Heffernan's tax forms and paychecks identify his employer as "Aon Services Corporation, Chicago, Illinois" (Pls.' Resp. at 1–2, Dkt. No. 97), that entity is not named in the complaint. Heffernan contends that his work for Aon consisted of selling insurance, that Aon plc, Aon Group, Inc., and Aon Services Corporation did not sell insurance, and that he understood himself to be an employee of Aon Risk Insurance Services West, Inc. (Heffernan Decl. ¶ 7, Dkt. No. 51–2.) Despite that disagreement, the parties do not dispute that at the time of his departure on the January 26, 2016, Heffernan held the position of Executive Vice President and Regional Managing Director of an Aon division, the Construction Services Group, located in San Jose, California, and that he was the head of an Aon office there. (Compl. ¶ 8, Dkt. No. 1.)[1]

---

[1] In describing the events that resulted in this action, the parties frequently refer to "Aon" without distinguishing between the various corporate entities that include the moniker Aon in their names. The parties do not appear to be in complete agreement as to which entity conducted which activity. Where such distinctions are both material and clearly established by the record, the Court will identify specific Aon entities. The general label "Aon" will be used where the parties have not drawn clear distinctions. "Plaintiffs" will refer to the two Aon entities that are parties to this action in the context of their roles here.

Heffernan and Aon plc were parties to two agreements that awarded Heffernan rights to shares of Aon plc stock. (Dkt. Nos. 1-2, 1-3.) The agreements explicitly equated Aon plc, Aon Group, Inc., and Aon Group's subsidiaries and affiliates and divisions thereof (identified collectively as "Aon") as holders of interests to be protected by Heffernan's agreements to refrain from specified activities. (Compl. ¶ 9a, Dkt. No. 1.) Heffernan agreed that for a period of two years following his termination from Aon, he would not directly or indirectly solicit, accept, or engage in for any other company any business from (1) an Aon client for which he provided or supervised services or with which he had become familiar "during the twenty-four (24) months prior to [his] Termination Date or within twelve (12) months prior to such Termination date;" or (2) any prospective client that he had directly or indirectly solicited and to which Aon had submitted a service proposal during the six months prior to his termination date. (*Id.* ¶ 9b.) The agreements also provided that Heffernan would not directly or indirectly solicit or cause any third party to solicit any Aon employee to leave Aon employment for two years after his termination and that he would not use any Aon confidential information except as required in the course of his employment there. (*Id.* ¶¶ 9c, 9g.) Finally, the agreements provide that they are to be "governed by and construed in accordance with the substantive laws of the State of Illinois, without regard to the conflict of law principles, rules or statutes of any jurisdiction." (*Id.* ¶ 10j.) Venue for any legal proceedings "shall be Cook County, Illinois." (*Id.* ¶ 10k.)

Plaintiffs allege that Heffernan requested and received access to an Aon proprietary and confidential database of client information on January 11, 2016, and that he had no legitimate business purpose for accessing the data he downloaded. (Compl. ¶¶ 31, 36, 57, Dkt. No. 1.) They claim that he later used data derived from that database to make a client proposal for Alliant that competed with an Aon proposal. (*Id.* ¶ 47.) Plaintiffs further allege, and Defendants do not

dispute, that on the morning of January 26, 2016, without notice, Heffernan resigned from Aon and immediately joined Alliant. (*Id.* ¶ 10.) On the same day, more than 20 employees who had worked under Heffernan in Aon's San Jose office also left for Alliant. (*Id.* ¶ 20.) Also on that date, Heffernan filed suit in the California Superior Court, County of Santa Clara seeking a declaration that the post-termination restrictions of the two stock unit agreements are invalid and unenforceable as a matter of California law. (*Id.* ¶ 20 n.1.)

Plaintiffs filed this action on February 3, 2016. They assert claims for breaches of each of the two stock unit agreements' prohibitions against client solicitation, employee solicitation, and misuse of confidential information. Plaintiffs further claim that, before his resignation, Heffernan breached his fiduciary duties to Aon and that Alliant aided and abetted those breaches, and that Heffernan's use of Aon confidential information violated the Illinois Trade Secret Act, 765 ILCS 1065.

This Court granted Plaintiffs' motion for a temporary restraining order ("TRO") enjoining the client and employee solicitation and confidential information use prohibited by the stock unit agreements. (Dkt. Nos. 26, 28.) The Court's order acknowledged the parties' disagreement as to whether their dispute should be governed by the law of California or that of Illinois and also recognized that the issue was "likely determinative of whether and to what extent Plaintiffs will succeed on their claims." (Feb. 10, 2016 TRO at 5, Dkt. No. 28.) The Court held that Plaintiffs, in support of their argument for the application of Illinois law, had made a showing sufficient to satisfy their burden at the TRO stage but recognized that this showing could be rebutted following the development of a more complete record. (*Id.* at 3, 5.)

As discussed below, the parties' arguments on the choice-of-law issue focus mostly on the fact-intensive question of which state possesses the greater interest in the disputed matters.

4

Due to the significance of the choice-of-law determination as a threshold issue, the parties proceeded with discovery and briefing on the choice-of-law question before any preliminary injunction hearing or other proceedings on the merits. The parties' choice-of-law discovery disputes were resolved by orders of February 22, 2016 (Dkt. No. 40), March 7, 2016 (Dkt. No. 55), March 21, 2016 (Dkt. No. 61), April 12, 2016 (Dkt. No. 85), and May 2, 2016 (Dkt. No. 100). As choice-of-law discovery progressed, Defendants filed their motion to dismiss this action or, alternatively, to transfer it to the Northern District of California. Plaintiffs' motion to conduct additional discovery on that issue was denied. (Dkt. No. 87.) The parties then completed briefing on the choice-of-law issue and dismissal motion. Both matters are now before the Court.

## DISCUSSION

### I. Defendants' Motion to Dismiss or Transfer

Defendants seek dismissal of the present action on *forum non conveniens* grounds or, alternatively, transfer to the Northern District of California. Although the principles governing each form of relief are related, federal law distinguishes the two.

#### A. *Forum Non Conveniens* Dismissal

Defendants' initial challenge to the propriety of this forum asserts the *forum non conveniens* doctrine as a basis to dismiss Plaintiffs' claims. *Forum non conveniens,* a common-law doctrine, allows a court to dismiss a case if an alternative forum is available and dismissal would serve the interests of justice, even if the court may properly exercise jurisdiction over the subject matter and parties. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 717–18 (7th Cir. 2002). IN this case, Defendants argue that the state courts of California provide an appropriate alternative forum.

When, as here, the proposed alternative forum is a state court rather than a foreign jurisdiction, the continued viability of the *forum non conveniens* doctrine is unclear. The existence of a specific statute governing transfer of domestic actions from one federal court to another, 28 U.S.C. § 1404, has prompted the Supreme Court to observe that "the federal doctrine of *forum non conveniens* has continuing application only in cases where the alternative forum is abroad." *Am. Dredging Co. v. Miller*, 510 U.S. 443, 462 n.2, (1994). The Supreme Court has subsequently acknowledged the possibility of dismissal of a federal action in favor of a state court forum "perhaps in rare instances where a state or territorial court serves litigational convenience best." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007). But the Seventh Circuit has made clear that because application of the doctrine produces the potentially more severe result of dismissal, a defendant seeking its invocation must meet a higher burden than that required for transfer to another federal court. *In re Hudson*, 710 F.3d 716, 718 (7th Cir. 2013).

Although Heffernan's declaratory judgment action is pending in California state court, Defendants do not contend that convenience demands litigation of this action in a California court rather than a federal forum. Nor do they suggest any other basis for characterizing this case as one of the "rare" instances justifying dismissal in favor of a state forum. To the contrary, they argue that an alternative to dismissal on *forum non conveniens* grounds is a transfer to another federal court, *i.e.*, the United States District Court for the Northern District of California. Defendants' motion is accordingly denied as to their request for dismissal.

### B. Transfer

To justify a transfer of venue pursuant to § 1404(a), the moving party must show that venue would be proper in the proposed transferee district, that the transferee district is more

convenient for parties and witnesses, and that transfer would serve the interests of justice. *Gueorguiev v. Max Rave, LLC,* 526 F. Supp. 2d 853, 856 (N.D. Ill. 2007). The movant has the burden of establishing that the transferee forum is clearly more convenient. *Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 219–220 (7th Cir. 1986). The interest-of-justice factor generally involves consideration of issues such as trying related litigation together, ensuring a speedy trial, and having the trial before a judge who is familiar with the applicable law. *Delta Air Lines, Inc. v. Perfekt Mktg., Inc.*, 861 F. Supp. 2d 919, 920 (N.D. Ill. 2012). Plaintiffs do not dispute that venue would be proper in the Northern District of California.

As noted above, Plaintiffs allege that Heffernan breached three provisions of each of two stock unit agreements; those agreements provided that venue for any related proceedings would be "Cook County, Illinois." A valid forum-selection agreement generally precludes consideration of the contracting parties' convenience as part of the transfer analysis. "When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 581–82 (2013).

Defendants argue that the forum-selection provisions in the stock agreements are invalid because they are unconscionable. An agreement may be invalid either because of its procedural or substantive unconscionability. *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 777–78 (7th Cir. 2014). An agreement is procedurally unconscionable where a term at issue is so difficult to find, read, or understand that a party cannot fairly be said to have been aware that he was agreeing to

7

it, and it is substantively unconscionable if its terms are so one-sided as to oppress or unfairly surprise an innocent party. *Id.*[2]

Heffernan claims that he agreed to the restricted stock agreements electronically, that he was not given paper copies, that he did not have "an opportunity to negotiate" their terms, and that he did not notice their forum-selection clauses. But the evidence presented suggests that Heffernan was an educated senior executive and that the agreements at issue were offered as part of an offer of incentive compensation in addition to his salary. No evidence indicates that he was prevented from reading the terms of the agreements, coerced into signing them, prevented from raising any objections he may have had, or compelled by an inferior bargaining position to accept objectionable provisions. In the absence of such evidence, Heffernan's assertion that he did not read the forum-selection clauses is insufficient to support a claim of unconscionability. *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1292 (7th Cir. 1989). The forum-selection clauses are neither procedurally nor substantively unconscionable and are enforceable against Heffernan.

Defendants assert that because Alliant was not a party to the stock unit agreements their terms cannot be enforced against it and that its convenience must be considered even if Heffernan's convenience is ignored. Yet the record indicates that Alliant, like Aon, is an entity with national presence, capable of bearing the burden of litigation in any court in the United States. Although the record demonstrates that a substantial majority of likely witnesses are located in California, the nature of Plaintiffs' claims suggests that the most relevant testimony will be provided by individuals who are employees of either Aon or Alliant. The convenience of

---

[2] Defendants argue that the forum-selection clauses are unconscionable under either California or Illinois law and do not suggest that any difference between the states' laws would be outcome-determinative here. As explained below, the Court concludes that Illinois law applies to this dispute. However, the Court would also reject Defendants' unconscionability argument under California law.

8

employee witnesses is less important in a transfer analysis since party witnesses normally must appear voluntarily. *Moore v. Motor Coach Indus., Inc.*, 487 F. Supp. 2d 1003, 1007-08 (N.D. Ill. 2007); *First Nat'l Bank v. El Camino Res., Ltd.,* 447 F. Supp. 2d 902, 913 (N.D. Ill. 2006).

The parties' evidence indicates that the employees at issue, their activities, and the vast majority of the business to which they relate are in California. The connection of that forum to the events underlying this dispute thus weighs strongly in favor of litigation there. But the weight of that public interest factor is insufficient to override the forum-selection clause that governs the breach of contract claims against Heffernan. *Atlantic Marine,* 134 S. Ct. at 582 (forum-selection clause should control "except in unusual cases," which "will not be common"). The forum-selection clauses thus control the claims arising from the stock unit agreements.

Although the forum-selection clauses do not control the non-contractual claims against Heffernan or the claim against Alliant for abetting his alleged breaches of fiduciary duty, the public-interest analysis should also include a consideration of the benefits of deciding related claims in the same proceeding and avoiding the possibility of duplicate or inconsistent proceedings in different federal courts. *See Coffey*, 796 F.2d at 221; *F.T.C. v. MacArthur*, 532 F.2d 1135, 1143 (7th Cir. 1976); *see also Aquila v. Fleetwood, R.V., Inc.*, No. 12-CV-3281 LDW GRB, 2014 WL 1379648, at *4–5 (E.D.N.Y. Mar. 27, 2014). The non-contractual claims here are so clearly intertwined with the contractual claims governed by the forum-selection clause that the public interest dictates they be resolved in the same proceeding and outweighs both Alliant's private interests and the public interest of California's greater connection to the events at issue. Defendants' motion is therefore also denied as to their alternative request for transfer to the Northern District of California.

**II.     Choice of Law**

Generally, when a federal court hears a case in the exercise of its diversity jurisdiction, the court applies the choice-of-law rules of the forum-state to determine which state's substantive law applies. *Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009). Defendants here contend that Illinois choice-of-law rules dictate the application of California law to the present dispute because of that state's stronger interest in the events at issue.

As an initial matter, it is not clear that an Illinois court would employ a conflicts analysis to decide the law applicable to the stock unit agreements. As noted above, the agreements themselves provide that they are to be "governed by and construed in accordance with the substantive laws of the State of Illinois, without regard to the conflict of law principles, rules or statutes of any jurisdiction." Illinois courts construe such provisions as dictating application of its substantive law without regard to the state's conflicts principles. *Hutcherson v. Sears Roebuck & Co.*, 793 N.E.2d 886, 890–91 (Ill. App. Ct. 2003); *see also Rabe v. United Air Lines, Inc.*, 636 F.3d 866, 871, n.2 (7th Cir. 2011). These authorities indicate that an Illinois court would employ Illinois law to decide the claims under the stock unit agreements.

The same result is also dictated by a conflicts analysis. Defendants argue that Illinois courts would determine the validity of a contractual choice-of-law provision by reference to the Restatement (Second) of Conflict of Laws § 187. They contend that the Restatement precludes enforcement of a contractual choice-of-law provision where the selected state has no substantial relationship to the parties or transaction or where application of the chosen state's law would be contrary to a fundamental policy of a state with a materially greater interest in the dispute. The Restatement's analysis of the relative interests of competing states has been employed by the

Illinois Appellate Court and in this District to determine the validity of contractual choice-of-law provisions. *See Int'l Surplus Lines Ins. Co. v. Pioneer Life Ins. Co. of Ill.*, 568 N.E.2d 9, 14 (Ill. App. Ct. 1990); *LKQ Corp. v. Fengler*, No. 12-CV-2741, 2012 WL 1405774, at *3 (N.D. Ill. Apr. 23, 2012).

But the Illinois Supreme Court and the Seventh Circuit have both held that under Illinois law, contractual choice-of-law provisions are generally enforceable, and they have reached this conclusion without resort to the Restatement's significant contacts analysis. *See, e.g.*, *Hofeld v. Nationwide Life Ins. Co.*, 322 N.E.2d 454, 458 (Ill. 1975) ("Generally, the law applicable to a contract is that which the parties intended, assuming such an intent. When that intent is expressed, it should be followed."); *Reighley v. Cont'l Ill. Nat. Bank & Trust Co. of Chicago*, 61 N.E.2d 29, 33 (Ill. 1945) ("[I]t is permissible for the parties to agree, subject to certain limitation, that the construction of a contract and the validity of the same may be governed and controlled by a law agreed upon between the parties."); *Agfa-Gevaert, A.G. v. A.B. Dick Co.*, 879 F.2d 1518, 1520 (7th Cir. 1989) ("The district court was required in this diversity case to honor the choice-of-law provision if an Illinois court would do so, and it would."); *SCA Servs., Inc. v. Lucky Stores*, 599 F.2d 178, 180 (7th Cir. 1979) ("Illinois courts give effect to choice of law clauses."); *see also Lyon Fin. Servs., Inc. v. Ill. Paper & Copier Co.*, 732 F.3d 755, 758–59 (7th Cir. 2013); *H.B. Fuller Co. v. Kinetic Sys., Inc.*, 932 F.2d 681, 685 (7th Cir. 1991).

This Court "must attempt to resolve issues in the same manner as would the highest court of the state that provides the applicable law." *Netherlands Ins. Co. v. Phusion Projects, Inc.*, 737 F.3d 1174, 1177 (7th Cir. 2013). Because the Illinois Supreme Court has applied Illinois conflicts principles to permit enforcement of contractual choice-of-law provisions without application of the Restatement's significant contacts test—and because the Seventh Circuit has

consistently interpreted Illinois law in the same manner—this Court concludes that, even if Illinois conflicts analysis is applied, the contractual provisions here are properly enforced without regard to California's more significant contacts with this dispute. The choice-of-law provisions in the stock unit agreements govern the claims arising thereunder.

As for Plaintiffs' tort claims, Defendants again assert that California's more significant contacts with the events at issue dictate application of that state's substantive law. But the parties have not identified any difference between the laws of California and Illinois as to the breach of fiduciary duty and aiding-and-abetting claims. Illinois courts do not conduct a choice-of-law analysis in the absence of such differences. "A choice-of-law determination is required only when a difference in law will make a difference in the outcome." *Townsend v. Sears, Roebuck & Co.*, 879 N.E.2d 893, 898 (Ill. 2007). The party seeking the choice-of-law determination bears the burden of demonstrating an outcome-determinative difference. *Bridgeview Health Care Ctr., Ltd. v. State Farm Fire & Cas. Co.*, 10 N.E.3d 902, 905 (Ill. 2014). In the absence of that showing, the mere assertion that a different state's law applies is insufficient to trigger a conflicts analysis or a most-significant-contacts test, and Illinois courts apply Illinois law. *Id.* at 909. Since the necessary showing is absent here, Illinois law will be applied to Plaintiffs' tort claims.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss or transfer the present action (Dkt. No. 50) is denied and further proceedings here will be governed by the substantive law of the State of Illinois.

ENTERED:

Dated: February 6, 2017

_____
Andrea R. Wood
United States District Judge